# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| LANCE FOSTER, et al., | } |
| Plaintiffs, | } |
| v. | } Case No.: 4:04-CV-1277-RDP |
| STOOKSBURY FARMS, et al., | } |
| Defendants. | } |

## MEMORANDUM OPINION

Pending before the court are: (1) Defendants Kay Cassell and Kay Cassell Equine Insurance's (hereinafter referred to collectively as "Insurance Defendants") Motion to Alter, Amend, or Clarify the Judgment (Doc. # 50) filed on March 16, 2007 and (2) Defendants Mount Empire Large Hospital and Dr. Christy Miller's (hereinafter referred to collectively as "Veterinary Defendants") Motion to Alter, Vacate, or Amend (Doc. # 51) filed on March 19, 2007. Both motions seek a revision or vacatur (or both) of the court's March 2, 2007 order and memorandum opinion (Docs. # 48 & # 49).

### Insurance Defendants' Motion to Alter, Amend or Clarify the Judgment

Upon reconsideration, the court concludes that the Insurance Defendants' Motion to Alter, Amend, or Clarify the Judgment (Doc. # 50) is due to be granted for the reasons set forth below. After the court issued its order and opinion on summary judgement, Counts III ("Innocent or Mistaken Misrepresentation"), IV ("Reckless Representation"), V ("Intentional Misrepresentation"), and X ("Action Concerning Insurance") remained as against the Insurance Defendants. After reviewing the parties' submission in this case again, the court concludes that nothing in the Rule 56 record indicates that Defendant Kay Cassell made any misrepresentation to Plaintiffs in connection

with the sale of insurance or otherwise. Therefore, all claims against the Insurance Defendants will be dismissed.

At base, Plaintiffs' claims that remain against the Insurance Defendants all concern an action for fraud, as the Plaintiffs allege that Defendant Cassell represented to them that Im Static did, in fact, have two properly descended testicles, which they relied upon in procuring insurance. Under Alabama law, a party making a claim for fraud must establish: "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Ex parte Michelin N. Am., Inc.*, 795 So. 2d 674, 678–79 (Ala. 2001) (quoting *Padgett v. Hughes*, 535 So. 2d 140 (Ala. 1988)). A review of the undisputed facts in this case,[1] reveals that Cassell was merely a messenger or conduit through which the Certificate of Examination completed by Defendant Dr. Christie Miller, stating that Im Static had two properly descended testicles, was sent to Plaintiffs. Cassell merely told Sheri Foster that a veterinarian had checked Im Static, per Mrs. Foster's request, and that the veterinarian opined the horse did have two properly descended testicles. (Doc. # 36 Ex. A 60, 68, 129; Doc. # 36 Ex. B 89–92, 275–276, 278; Ex. K). After reviewing *each and every* reference to the insurance transaction made by Mrs. Foster in her deposition, the court is satisfied that: (1) Cassell simply relayed the information on the Certificate of Examination to Mrs. Foster; (2) Mrs. Foster understood that this is what Cassell was doing; (3) Mrs. Foster understood that Cassell was not a veterinarian and had not performed the exam herself, nor had she visually inspected Im Static herself; (4) Mrs. Foster

---

[1]The court does not reproduce the facts of the case here, and instead relies on the "Statement of Facts" recited in the court's March 2, 2007 Memorandum Opinion (Doc. # 48), as there have been no additional facts or factual changes submitted to the court.

understood the terms of the insurance policy exactly, understood that Im Static had to be initially insured as a "show horse," and agreed to all the terms of the policy; and, (5) all changes to the policy that Plaintiffs requested were made.  (Doc. # 36 Ex. B 85–94, 101–104, 109, 122–24, 173–77, 186–87, 190, 225, 233–76, 278–80).  In short, the court has not found anything in the record that suggests that Defendant Cassell made any misrepresentation to the Fosters.   Therefore, all claims against the Insurance Defendants are due to be dismissed.

### Veterinary Defendants' Motion to Alter, Vacate or Amend

Furthermore, upon reconsideration, the Veterinary Defendants' Motion to Alter, Vacate, or Amend (Doc. # 51) is due to be granted in part and denied in part.[2]  The court finds that the motion is due to be granted as to Plaintiff's claims that are based upon professional negligence and denied as to those claims premised upon a misrepresentation.  As to the claims based upon professional negligence—*i.e.*, Count I ("Negligence") and Count II ("Wantonness")—the court agrees with the Veterinary Defendants that Plaintiffs have failed to show that, even assuming Dr. Miller owed a duty of care to the Plaintiffs, she failed to comply with the applicable standard of care in treating Im Static, as discussed below.  However, Defendants have not provided a sufficient rationale to alter, amend, or vacate the judgment on the claims concerning the alleged misrepresentation made by Dr. Miller; accordingly, the Veterinary Defendants are not entitled to judgment as a matter of law on Count III ("Innocent or Mistaken Misrepresentation"), Count IV ("Reckless Representation"), and

---

[2] Although the motion was filed more than ten days after the court's previous order, the court does not believe that is a basis for denying the Veterinary Defendants the relief to which they are entitled.

Count V ("Intentional Misrepresentation").[3] The court has again noted Dr. Miller's arguments that she did not communicate directly with Plaintiffs, that Plaintiffs could not have reasonably relied upon her statements, and that she exercised reasonable care in "obtaining or communicating" the information on the insurance form. However, the court is unprepared to rule that it is unreasonable for a veterinarian to anticipate that the owners or future owners of an animal could rely on an examination performed by that veterinarian and a form filled out by her for the purposes of insurance or otherwise. Obviously, the burden shall remain on the Plaintiffs to show that: (1) Dr. Miller did, in fact, misrepresent a material fact; (2) Dr. Miller reasonably should have anticipated that they would rely on such fact in this case; (3) they did, in fact, properly rely on such a fact; and (4) if such misrepresentation was made, what degree of scienter Dr. Miller had when making it. The court reminds the parties that it is willing to consider a renewed motion for judgment as a matter of law on any claims for which Plaintiffs have failed to carry their burden at trial.

The court notes that Veterinary Defendants have argued that the court should apply Tennessee law to the claims of professional negligence, while Plaintiffs argue that Alabama law is applicable to the entire suit. As Plaintiffs must prove Dr. Miller's deviation from the appropriate standard of care under both states' laws, the court will not reach this issue. *See Bradford v. McGee*, 534 So.2d 1076 (Ala.1988); *Norris v. East Tenn. Children's Hosp.*, 195 S.W.23d 78, 86 (Tenn. App. 2005). Furthermore, because Alabama and Tennessee law differ only slightly on the question

---

[3]The court here underscores Plaintiffs' burden to prove a degree of scienter on the part of Defendant Dr. Miller when making any alleged misrepresentation. Plaintiffs will be required to state their position with appropriate particularity in the pre-trial order. The court reminds the parties that it may revisit this issue on a Fed. R. Civ. P. 50 motion at trial.

of to whom a medical professional owes a duty of care, the court will assume without deciding that Dr. Miller did, in fact, owe Plaintiffs a duty of care, either directly or indirectly (*i.e.*, she should have reasonably foreseen that Plaintiffs, as future owners of the horse, would encounter and rely on her examination and the insurance form), but only for the purposes of determining whether she deviated from the appropriate standards of care. *Compare Doe v. Linder Constr. Co.,* 845 S.W.2d 173, 177–78 (Tenn.1992) (stating that the existence of a duty of care depends upon whether the consequences of a defendant's actions were foreseeable and the particular circumstances of the case) *and Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn. 1994) ("If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability.") *with Morgan v. South Cent. Bell Tel. Co.*, 466 So.2d 107, 114 (Ala. 1985) (the existence of a duty in a negligence action is determined by a number of factors, "including (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened") *and Key v. Compass Bank, Inc.*, 826 So.2d 159, 170 (Ala. Civ. App. 2001) (quoting *Patrick v. Union State Bank*, 681 So.2d 1364, 1368 (Ala.1996)) ("'The key factor is whether the injury was foreseeable by the defendant.'").

In Alabama, medical professionals have the legal duty "to exercise the degree of care, diligence, and skill that reasonably competent [medical professionals] in the national medical community would ordinarily exercise when acting in the same or similar circumstances." *Bradford v. McGee*, 534 So.2d 1076, 1079 (Ala. 1988). "To recover damages for an alleged breach of this duty, a plaintiff must produce evidence that establishes 1) the appropriate standard of care, 2) the

5

[professional]'s deviation from that standard, and 3) a proximate causal connection between the [professional]'s act or omission constituting the breach and the injury sustained by the plaintiff." *Id.* Specifically, on summary judgment, "once the defendant offers expert testimony in his behalf (albeit his own opinion), establishing lack of negligence, the defendant is entitled to a summary judgment, unless the plaintiff counters the defendant's evidence with expert testimony in support of the plaintiff's claim." *Swendsen v. Gross*, 530 So.2d 764, 768 (Ala. 1988).

Similarly, under Tennessee law, Plaintiffs "must offer expert testimony setting forth specific facts demonstrating that a defendant's acts or omissions fell below the recognized standard of care and that those acts or omissions proximately caused the subject injury." *Norris v. East Tenn. Children's Hosp.*, 195 S.W.3d 78, 86 (Tenn. App. 2005) (citing *Payne v. Caldwell*, 796 S.W.2d 142 (Tenn. 1990)). Expert testimony that merely offers a disagreement with a diagnosis is not sufficient to meet such requirement. *Dunham v. Stones River Hosp., Inc.*, 40 S.W.3d 47, 52 (Tenn. App. 2000) (finding that testimony that alleged mis-diagnosis fell below "community practices" was insufficient to show cause of action for malpractice).

Thus, the court now agrees with Veterinary Defendants that the mere fact that Dr. Miller may have been wrong when she determined that Im Static had two testicles, is not enough to establish professional negligence or wantonness, for "the law does not require that a veterinarian be infallible in his treatment of an animal." *Turner v. Benhart*, 527 So.2d 717, 718 (Ala. 1988). Instead, the court here applies the "medical judgment rule," which does not hold a veterinarian liable based upon hindsight, but finds no breach of the standard of care where the veterinarian chooses "a recognized method of treatment, even though other experts testify that they would have chosen an alternative

6

method of treatment." *Id.*

In this case, Plaintiff's expert, Dr. Salvati, did not criticize Dr. Miller's method of treatment, but only disagreed with her diagnosis, calling it "a simple mistake" and refusing to characterize it as "malpractice." (Doc. # 36 Ex. F at 44, 52). In fact, Dr. Salvati candidly admitted that the manner in which Dr. Miller performed the insurance examination on Im Static was "[h]onestly [] more than I would have done." (Doc. # 36 Ex. F at 44–47). Thus, although Dr. Salvati's testimony may indicate that Dr. Miller's conclusions were wrong—and that evidence may go to the question of whether or not she misrepresented that Im Static had two testicles—it does not show that she deviated from the appropriate standard of care under the circumstances in this case. After reviewing the record, the court concludes that Plaintiffs have failed to produce sufficient evidence to create a genuine issue of material fact as to whether Dr. Miller's actions fell below the acceptable standard of care under the circumstances. Therefore, Counts I and II against the Veterinary Defendants are due to be dismissed. An order will be entered contemporaneously with this memorandum opinion.

**DONE** and **ORDERED** this ___29th___ day of March, 2007.

                                                                          _____
                                                                          **R. DAVID PROCTOR**
                                                                          UNITED STATES DISTRICT JUDGE